UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE

Eastern District of Kentucky
FILED
SEP 29 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-364-GWU

TIMOTHY PATTON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Patton

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Patton

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning a specific step in the test is in order.

In the Sixth Circuit, the Step Three severity regulation has been held to be a de minimis hurdle in the disability determination process. Murphy v. Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986). An impairment can be considered not severe only if it is a "slight abnormality that minimally affects work ability regardless of age, education, and experience." Farris v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985). Essentially, the severity requirements may be used to weed out claims that are "totally groundless." Id., n.1.

## DISCUSSION

The plaintiff, Timothy Patton, filed his current application for SSI on October 31, 2002, alleging disability due to manic depression, nervousness, and anxiety. (Tr. 125-6). An Administrative Law Judge (ALJ), after reviewing the evidence, concluded that Mr. Patton did not have a "severe" impairment, and terminated the sequential evaluation at Step Three of the Garner analysis. (Tr. 19). The Appeals Council declined to review, and this action followed.

Although the plaintiff testified that he was unable to keep any job for long because of nervousness, and submitted fairly extensive evidence of treatment for bipolar disorder and substance abuse problems as a teenager (e.g., Tr. 203-32), the

medical evidence from the relevant period after the date of his SSI application in October, 2002 consists of a one-time psychiatric evaluation and treatment notes from the Comprehensive Care Center (CCC), where Mr. Patton had been treated since January, 2000, and had also been given a diagnosis of a bipolar disorder (e.g., Tr. 311, 315, 327). Throughout 2002, the plaintiff was noted to be seemingly stable and "doing well" with no psychotic symptoms (Tr. 301-2), and on October 10, 2002 he told the CCC staff psychiatrist that with his medications of Paxil and Zyprexa he was sleeping better, and eating "OK," with no psychotic symptoms elicited. (Tr. 298). Apparently, Mr. Patton missed his scheduled December appointment and, when seen again in January, 2003, he reported he was taking his medications as ordered, except for Depakote which he had not taken for three to four months; his mood was stable, with no mood swings or hallucinations. (Tr. 297-8). He was offered a prescription for Depakote, but declined. (Tr. 297). No functional restrictions or Global Assessment of Functioning (GAF) score were ever offered.

The consultative psychiatrist, Dr. Wayne Ross Edwards, examined the plaintiff in January, 2003. Mr. Patton initially told the psychologist that he had absolutely no problems, and was there only to get disability. (Tr. 328). He then claimed to be nervous, and asserted that he would have manic episodes if he attempted to work. (Id.). He stated that the last time this had happened was 1997, and felt that he was "probably" getting better now that he was on medication. (Id.). He denied

depressive symptoms, and Dr. Edwards described his mood as good. (Tr. 328-30). Mr. Patton performed some household chores, was able to use public transportation, the telephone, and the Postal Service without much difficulty, could perform his own personal hygiene, and got along well with family, friends, and neighbors. (Tr. 331). He did not get along well with his last boss, but did get along with his co-workers. Dr. Edwards indicated that Mr. Patton was able to relate to him appropriately, but had slow responses at times. (Id.). He diagnosed nicotine dependency, a written expression disorder (based on the patient's ability to fill out necessary papers prior to the interview), and a mood disorder, along with "rule out" borderline intellectual functioning. (Tr. 331-2). He assigned a GAF score of 60 to 65, reflecting "moderate" to "mild" symptoms. Diagnostic and Statistical Manual of Mental Disorders (Fourth Edition-Text Revision), p. 34. In his opinion, the patient appeared to be able to perform simple, work-related tasks, ask simple questions and ask for assistance, had appropriate understanding and remembering capabilities in order to follow one and two-step simple commands. (Tr. 332). His concentration and persistence were consistent with his level of education, he appeared to be able to work without special supervision, identify normal hazards and take appropriate precautions, and demonstrated an ability to adapt to changes in day-to-day work settings without significant impairment. (Id.). Dr. Edwards concluded that Mr. Patton "appeared to

be able to work eight hours a day, five days a week without psychiatric symptoms when performing a simple job task." (Id.).

Two state agency psychologists reviewed the evidence and concluded that the plaintiff did not have a "severe" impairment. (Tr. 334, 348).

The Court concludes that in this case the plaintiff did not carry even this <u>de minimis</u> burden envisioned in <u>Farris</u>, 773 F.2d at 90. In view of the fact that neither the treating sources or the psychiatric consultant identified any functional restrictions, the ALJ's decision to find no "severe" impairment is supported by substantial evidence.

The plaintiff's only argument is that, in the course of his decision, the ALJ wrote that the claimant had "exhibited some of the features of the 'A' criteria of Listings 12.04 and 12.06," but the evidence did not show that he had more than "mild" limitations in activities of daily living and concentration, persistence, and pace under the "B" criteria of the listings. (Tr. 17).[1] The plaintiff equates these findings as establishing more than a slight limitation in his ability to perform work. However, even assuming for the sake of argument that a mild limitation in daily activities and in concentration would more than minimally affect the plaintiff's ability to work, the findings were gratuitous in view of the specific conclusions of the examining

---

[1] Strictly speaking, a discussion of the Listings was unnecessary under the sequential evaluation process until it had been determined that the plaintiff had a "severe" impairment. <u>Garner</u>, 745 F.2d at 387.

Patton

psychiatrist and of the reviewing psychologists that there would be no such limitations.[2]

The decision will be affirmed.

This the  29  day of September, 2005.

*G. Wix Unthank* (signature)
G. WIX UNTHANK
SENIOR JUDGE

---

[2]Even if the case were to be remanded on this point, Social Security Ruling 85-15 provides that "where a person's only impairment is mental, [and] is not of Listing severity, but does prevent a person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work include the abilities (on the sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting." According to the uncontradicted conclusions of Dr. Edwards, the plaintiff would retain all of those abilities, and no purpose would be served by a remand.